## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 10-08956-DD |
| James F. Copeland, | Chapter 7 |
| Debtor. | **ORDER** |

This matter is before the Court on an Application for Administrative Expenses ("Application") filed on April 27, 2011, and re-filed on May 9, 2011 by Bonnie P. Horn. An Objection to Ms. Horn's Application was filed by the United States Trustee ("UST") on May 6, 2011. A Response to the Application was filed by Ryan Hovis, the chapter 7 trustee ("Trustee") on May 17, 2011. A hearing was held on June 7, 2011. At the conclusion of the hearing, the Court took the matter under advisement for further consideration. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court now makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

James F. Copeland ("Debtor") filed for chapter 7 relief on December 17, 2010 and received his discharge on April 6, 2011. Debtor's Schedules show net monthly income of $3,950 and monthly expenses of $5,785, leaving Debtor with no disposable income. Debtor has significant tax debt; his Schedules D and E show $29,919.58 of tax debt, $29,095.20 of which is secured. Debtor's Schedule F shows unsecured debt in the total amount of $747,745.66. Proofs of claim filed equal $552,150.70.

In March 2010, a notice of a class action settlement involving residential stucco was published in the South Carolina Lawyer magazine. Soon after, Ms. Horn noticed the

advertisement. Ms. Horn had previously represented Debtor in several matters and knew that he had experienced problems with the stucco at his residence. She mentioned the class action to him and ultimately, Debtor decided to pursue a claim under the settlement notice. Debtor reported the class action on his Statement of Financial Affairs, noting that the claim he filed in the class action settlement had been rejected. Debtor signed an Attorney Fee/Cost Agreement ("Fee Agreement") to retain Ms. Horn on July 14, 2010. Under the terms of that agreement, Debtor agreed that Ms. Horn would receive fifty (50) percent, after expenses, of any settlement or judgment ultimately recovered. After several months and the initial rejection of Debtor's claim, on January 14, 2011, Debtor received $19,944 as a result of the settlement. This money was paid by Ms. Horn to Trustee. Trustee did not retain Ms. Horn to represent the bankruptcy estate and has not provided notice of the settlement of the cause of action to creditors. While there was no firm timeline provided at the hearing, it appears that Trustee and Ms. Horn had conversations concerning the class action between the petition date and the date that settlement funds were received and turned over to Trustee.

Ms. Horn did not keep records of her time spent on the stucco action due to the contingent nature of her fees. She submitted a summary of her work on the case, which contained no time estimates and omitted dates for several of the actions she took in the case. She was unsure of exactly how much time she spent on the case, but estimated twenty (20) total hours of work, plus an unknown additional period of time for research. She stated that when agreeing to take Debtor's case she insisted on a large percentage of any recovery because class action recoveries tend to be small, and she believed she would have to put in a substantial amount of work on the case. Ms. Horn indicated that if she had known that she would have so much difficulty in recovering her fees, she would not have agreed to take Debtor's case.

Ms. Horn's practice is primarily in the area of domestic relations. Ms. Horn stated that her normal hourly rate is $325 per hour. Both Applications submitted by Ms. Horn indicated that her Fee Agreement was attached; however, it was not attached to either Application. The Fee Agreement was filed on the Court's docket on June 6, 2011, the day prior to the hearing, and was introduced into evidence at the hearing.

## CONCLUSIONS OF LAW

Ms. Horn's Application argues that she is entitled to payment of an administrative expense in the amount of $10,000.31. UST objects to the Application because Ms. Horn was not retained by the Trustee to represent the estate and because no time and expense records were submitted in support of the application. Trustee indicated in his Response to the Application that he believed Ms. Horn was entitled to some form of compensation. At the hearing, Trustee indicated that he had no objection to Ms. Horn receiving the full amount of the fees requested.

Administrative expenses are afforded a second priority in payment. 11 U.S.C. §§ 507(a)(2), 726(a)(1). 11 U.S.C. § 503 permits allowance of administrative expenses. The applicable subsections in the present case are section 503(b)(1) and (b)(2). Under those subsections, expenses must either be "actual, necessary costs and expenses of preserving the estate" or "compensation and reimbursement awarded under section 330(a)."

I.  Section 503(b)(1)

Section 503(b)(1) provides, "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including – (1)(A) the actual, necessary costs and expenses of preserving the estate including – (i) wages, salaries, and commissions for services rendered after the commencement of the case." The Fourth Circuit has held that for costs to be actual and necessary for preservation of the estate,

they must satisfy two criteria: (1) the costs must "arise from a post-petition transaction between the party claiming the administrative expense and the trustee", and (2) the party requesting recovery of costs must have "provided consideration benefitting the bankruptcy estate." *In re Smoot*, No. Civ. A. 305CV482-JRS, 2006 WL 848120, at *4 (E.D. Va. Mar. 30, 2006). Section 503(b)(1) must be narrowly construed. *Smoot*, 2006 WL 848120, at *4 (citing *Devan v. Simon Debartolo Group, L.P. (In re Merry-Go-Round Enters., Inc.)*, 180 F.3d 149, 157 (4th Cir. 1999)).

In the present case, Ms. Horn cannot meet the first element of the Fourth Circuit's two-part test. She had no agreement with Trustee to render services to the bankruptcy estate. Instead, despite some knowledge of a bankruptcy filing by Debtor, Ms. Horn represented Debtor to the conclusion of his class action settlement matter and never entered into an agreement with Trustee, despite some apparent communication with Trustee regarding the settlement.[1] While Ms. Horn's representation ultimately provided benefit to the bankruptcy estate, Ms. Horn cannot meet the first prong of the two-part test; as a result, she is not entitled to fees under section 503(b)(1).

**II.    Section 503(b)(2)**

Section 503(b)(2) provides, "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including – (2) compensation and reimbursement awarded under section 330(a) of this title." Section 330(a) allows a professional employed by the trustee under section 327 to recover "reasonable compensation for actual, necessary services," as well as "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 327 allows the trustee to obtain the court's approval to employ certain disinterested professionals to represent the trustee or "assist the trustee in

---

[1] The nature and extent of this communication is quite unclear, even after a hearing. To the extent that this can be clarified in the context of some further proceeding, the finding that there was no agreement may be revised.

carrying out the trustee's duties." Thus, if a professional is employed by the trustee under section 327 and is awarded compensation under section 330(a), that compensation is entitled to priority status by virtue of section 503(b)(2). *See In re Carolina Sales Corp.*, 45 B.R. 750, 751 (Bankr. E.D.N.C. 1985).

Courts have routinely held that these Code sections are unambiguous and that as a result, an attorney who has not been employed by the trustee cannot recover any attorney fees for services provided to a debtor. *In re W.T. Mayfield Sons Trucking Co.*, 225 B.R. 818, 824 (Bankr. N.D. Ga. 1998); *Carolina Sales*, 45 B.R. at 752 (citing 2 Collier on Bankruptcy ¶ 330.04[2] (15th ed. 1984)); *In re Morton Shoe Companies, Inc.*, 22 B.R. 449, 450 (Bankr. D. Mass. 1982). This sometimes harsh result is necessary in order to avoid potential abuse and additional financial burdens on the estate which could likely result from volunteers or "officious intermeddlers" providing unauthorized services. *In re Haley*, 950 F.2d 588, 590 (9th Cir. 1991); *Carolina Sales*, 45 B.R. at 753. "Hardship to the unauthorized professional is of no consequence since it is of his 'own making. The rule is clear, and they are charged with the knowledge of it.'" *Morton Shoe Companies,* 22 B.R. at 450 (quoting *In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988, 992 (2nd Cir. 1931)). In the present case, Ms. Horn performed both pre-petition and post-petition services which benefitted the estate, yet she was never employed by Trustee and never filed any application for employment.[2] Because Ms. Horn was not employed by Trustee and her

---

[2] The Court also notes that Ms. Horn failed to file a copy of her Fee Agreement until the day before the hearing, despite the fact that both versions of her Application indicated the Agreement was attached. Ms. Horn also was unable to provide the Court with the amount of time she spent on the case and did not provide dates for several of the actions she apparently performed in furtherance of the case. These factors combine to produce an inadequate record of the representation provided. While Ms. Horn testified that she spent a substantial amount of time on the case, and while Debtor ultimately received a settlement check, if the Court were in the position to determine the reasonable value of Ms. Horn's services (which it is not), it would have no basis on which to do so. Additionally, while it is possible that the contingency fee requested by Ms. Horn is reasonable compensation, it was not pre-approved by the Court under section 328(a), which allows a trustee, with prior court approval, to employ and compensate a professional on a contingency fee basis, unless the "terms and conditions [of the compensation agreement] prove to have been improvident in light of developments not capable of being anticipated at the time of

services were not authorized by the Court, she is not entitled to an administrative expense under section 503(b)(2).

### III. Quantum Meruit

At the hearing, Trustee suggested an award of fees based on quantum meruit. The equitable theory of quantum meruit does not help Ms. Horn. At least one court has stated, "When a party is not otherwise to be entitled to attorneys fees under § 330 or § 506(b), reimbursement for reasonable attorneys fees *quantum meruit* may be appropriate." *In re Club Assocs.*, 107 B.R. 794, 797 (Bankr. N.D. Ga. 1989). Under South Carolina law, however, a party is entitled to recovery based on a theory of quantum meruit if it can establish three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value." *Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609, 616–17, 703 S.E.2d 221, 225 (2010) (citing *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994)). However, South Carolina law also provides that if an express contract exists which covers the services for which a party is seeking compensation, the party may not recover under quantum meruit. *Swanson v. Stratos*, 350 S.C. 116, 122, 564 S.E.2d 117, 120 (Ct. App. 2002). In the present case, Debtor and Ms. Horn had an express contract for Ms. Horn to represent Debtor in connection with the class action settlement. That contract, not the theory of quantum meruit, governs Ms. Horn's fees. In addition, Ms. Horn did not have a contract with the bankruptcy estate; however, following the filing of a bankruptcy petition, the Bankruptcy Code controls with respect to any relationship between a professional, the debtor, and the bankruptcy estate. Quantum meruit cannot supplant the Bankruptcy Code's

---

the fixing of such terms and conditions." Therefore, the requested fee would have to be reviewed for reasonableness, if approved at all, under section 330(a).

requirement for court approval of professional employment. The Bankruptcy Code requires a professional to first be approved by the Court in order to represent the bankruptcy estate and recover fees for her services. *See* 11 U.S.C. §§ 327, 330. Because Ms. Horn did not obtain such prior approval,[3] she cannot recover her attorney fees under a theory of quantum meruit.

### IV.    Attorney's Lien

Finally, Ms. Horn cannot recover her requested fees by asserting an attorney's lien, because she does not have a valid charging lien. South Carolina recognizes a common law attorney's lien; however, such a lien covers only costs and disbursements, not attorney fees. *Eleazer v. Hardaway Concrete Co.,* 281 S.C. 344, 348, 315 S.E.2d 174, 177 (Ct. App. 1984). Because Ms. Horn has a common law lien on the settlement proceeds, she is entitled to recover her costs, which by the Court's calculation equal $28.31. An attorney and his client may create an additional lien for payment of the attorney's fees out of any recovery ultimately obtained; however, this charging lien can only be created by express agreement and intent to create such a lien between the attorney and the client. *Id.* In the present case, no such agreement existed. While there was a Fee Agreement in place, that document contained no agreement for the fixing of a lien on any recovery obtained by Debtor. In the absence of such an express agreement, the Court cannot find that Ms. Horn has a valid attorney's charging lien which entitles her to payment.

The Court recognizes that its decision in this matter may seem harsh. However, it is a fundamental principle that when a bankruptcy petition is filed, the debtor's property becomes property of the estate and is subject to the jurisdiction of the bankruptcy court. The continuation

---

[3] The Court notes that on occasion, it has granted Applications to Employ *nunc pro tunc* if a legitimate reason for the delay in obtaining Court approval is provided. In the present case, the trustee has not filed an Application to Employ Ms. Horn; as a result, the Court cannot speculate on whether such an Application, if in fact there were an agreement for employment, would be granted.

of any proceeding relating to the property of the estate without court approval is not proper. This is a principle of which all attorneys, regardless of their practice area, must be aware. Because Ms. Horn was charged with knowledge of this principle and failed to protect her rights with respect to her continued involvement in the stucco litigation recovery, she is not entitled to recover any fees for her unauthorized services.

## **CONCLUSION**

Ms. Horn was not employed by the chapter 7 trustee to provide services to the bankruptcy estate. As a result, Ms. Horn's claim for the contingency fee resulting from her representation of Debtor is not entitled to priority status under section 503. There is no basis to award Ms. Horn the fee she has requested. Ms. Horn is entitled to $28.31, the apparent amount of her costs and disbursements, and has a lien on the settlement proceeds for that amount. Ms. Horn's Application is otherwise denied.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**06/15/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 06/16/2011